FILED
17 JUN 26 PM 4:09
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ AD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

GRADY BOLTON,
    Plaintiff,

-vs-

CITY OF AUSTIN, RANDY DEAR,
MANUEL JIMENEZ, MICHAEL
NGUYEN, and ROLANDO RAMIREZ,
    Defendants.

CAUSE NO.:
A-17-CA-00077-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled case, and specifically the City of Austin (the City)'s Motion to Dismiss [#19], Plaintiff's Response [#21] in opposition, Plaintiff's Memorandum [#22] in opposition, and the City's Reply [#23] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

Plaintiff Grady Bolton brings this § 1983 suit against Officer Randy Dear, Officer Manuel Jimenez, Officer Michael Nguyen, and Officer Rolando Ramirez (Officer Defendants), as well as against the City of Austin, alleging claims for excessive force and unlawful detention in violation of the Fourth and Fourteenth Amendments.

Based on the allegations in the amended complaint, the events giving rise to this lawsuit transpired as follows. On February 9, 2015, Bolton stepped out of Maggie Mae's, a bar located on East Sixth Street in Austin, Texas, and "[f]or no apparent reason," was immediately ordered to leave the area by Officer Manuel Jimenez. Am. Compl. [#14] ¶ 5.1. Before Bolton could



vacate the area, Officer Jimenez grabbed Bolton and handcuffed him, telling Bolton he was under arrest. *Id.* ¶ 5.3. Bolton twice asked the officer why he was arrested. The first time he was told to be quiet; the second time the officer did not respond. *Id.* ¶ 5.4.

Bolton claims Officer Johnson then, "[s]uddenly and without provocation," punched Bolton in the face, causing Bolton to fall to the ground. *Id.* ¶ 5.5. Bolton states the Austin Police Department (APD)'s Incident Report confirms Johnson attempted to "effect a brachial stun" on Bolton. *Id.* Even though Bolton was incapacitated and handcuffed, Johnson allegedly continued to "pummel[] Bolton until long after Bolton was completely unconscious." *Id.* ¶ 5.8. Bolton claims Officer Nguyen held Bolton down as Officer Johnson beat him, and Officer Nguyen himself kneed Bolton four times. *Id.* ¶ 5.9. Bolton further claims Officers Rolando Ramirez and Randy Dear witnessed Officers Johnson and Nguyen beat Bolton but failed to intervene. *Id.*

Bolton was eventually transported to the Travis County Jail, where the nurse refused to admit Bolton both because of his injuries and the fact that he had been unconscious. *Id.* ¶ 5.11. Bolton was then taken to the University Medical Center Brackenridge to seek treatment for his injuries, which included facial contusions, significant bruising to his face, hands and arms, and a "probable concussion." *Id.* ¶¶ 5.11–5.12. Bolton was charged with resisting arrest, but the charge was later dismissed. *Id.* ¶ 5.13.

On February 3, 2017, Bolton filed his original complaint in which he appears to allege unlawful detention and excessive force claims against Officers Nguyen and Jimenez;[1] bystander liability claims against Officers Ramirez and Dear; supervisor liability claims against Officer Dear; and municipal liability claims against the City. *See* Compl. [#1]; *see also* Am. Compl. [#14]. As to the City in particular, Bolton claims the City maintains inadequate policies, has a custom or practice allowing officers to use excessive force and unlawfully detain individuals,

---

[1] According to Bolton, Officer Johnson was not sued in this lawsuit because he is deceased.

and fails to adequately train and supervise its officers. Bolton further alleges the City is liable for the actions of the Officer Defendants because APD's Chief of Police ratified their conduct. *Id.* ¶¶ 9.1–11.3. The City has moved to dismiss the claims against it. *See* Mot. Dismiss [#19]. The motion has been fully briefed by the parties and is now ripe for the Court's consideration.

## Analysis

### I. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff

3

must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Application

The City argues the claims against it must fail because Bolton is unable to establish municipal liability. In *Monell v. Department of Social Services*, the Supreme Court held that a municipality cannot be held liable under § 1983 on a theory of respondeat superior. 436 U.S. 658, 691 (1978). Municipalities and other local governments may incur § 1983 liability, however, where official policy or custom causes a constitutional violation. *Bennet v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984). For municipal liability to attach, the plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a "violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694).

Thus, a municipality may be sued under § 1983 "if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulations, or decision officially adopted and promulgated by that body's officers." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). "Alternatively, official policy is a persistent, widespread practice of city officials or employees, which, although no authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000). The failure to train or supervise municipal employees

may also constitute a "policy" when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). That is, a municipality's failure to train may constitute an actionable "policy" if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

For allegations of municipal liability to withstand a motion to dismiss, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory." *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997) (affirming dismissal with prejudice of § 1983 claim against the city). The allegations "must contain specific facts." *Id.*

In this case, the parties primarily dispute whether Bolton has adequately pleaded the official policy element of the municipal liability test. In his amended complaint, Bolton seeks to hold the City liable for its (1) inadequate policies, (2) customs, and (3) failure to train and supervise its officers. Bolton further claims the City should be liable for the Chief of Police's supposed ratification of the Officer Defendants' conduct. The Court addresses each allegation below.

A. **Inadequate Policies**

Bolton's amended complaint does not describe a specific policy, such as an official policy statement or police department rule, that was the cause of the Officer Defendants' conduct. Rather, Bolton generally alleges the City's policies regarding the use of excessive force and unlawful detention are "insufficient." Am. Compl. [#14] ¶¶ 9.2, 9.3. Yet Bolton provides no factual enhancement or support for this allegation. He does not describe what training the named officers did receive, nor did he explain how that training was deficient. Instead, he merely

5

proffers the conclusory allegation that the City "fail[s] to provide for prompt and thorough investigation of all complaints of civil rights violations by an entity outside of the chain of command" and fails to discipline "officers who participate in or witness a violation of civil rights" and choose not to act. *Id.* ¶ 9.4. Such conclusory allegations are insufficient to withstand a motion to dismiss. *See, e.g., Spiller*, 130 F.3d at 167 ("The description of a policy or custom and its relationship to the underlying violation[] . . . cannot be conclusory; it must contain specific facts."); *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 845 (S.D. Tex. 2011) (granting the defendants' motion to dismiss where the plaintiff provided only "generic, boilerplate recitations of the elements of claims against a municipality for an unconstitutional custom or practice").

**B.     Customs**

Bolton next appears to allege the City has an unwritten custom or practice of allowing officers to use excessive force and unlawfully detain individuals. Am. Compl. [#14] ¶¶ 9.2, 9.3. Municipal liability claims based on a local government's "customs" generally require that the plaintiff demonstrate a pattern of conduct. *See Sanders–Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010). In this case, Bolton's amended complaint recites two incidents from 2011 and 2012 where APD officers—other than the Officer Defendants—were alleged to have used excessive force. But Fifth Circuit precedent makes clear that such isolated violations "are not the persistent, often repeated, constant violations that constitute custom and policy." *Bennett*, 728 F.2d at 768 n.3. Indeed, the Fifth Circuit recently reaffirmed that factual allegations concerning one or two incidents involving similarly situated defendants are insufficient to demonstrate a widespread custom or practice capable of establishing municipal liability. *See Prince v. Curry*, 423 F. App'x 447, 451 (5th Cir. 2011) ("The existence of only one or, at most, two, other

similarly situated defendants does not plausibly suggest that Tarrant County has a policy or custom of unconstitutionally subjecting sex offenders to enhanced sentences that is 'so persistent and widespread as to practically have the force of law.'"). Bolton has failed to plead facts demonstrating a pattern of constitutional violations, and has therefore failed to adequately allege that the Officer Defendants were acting pursuant to an unwritten custom or widespread practice that would subject the City to municipal liability.

C.  **Failure to Train and Supervise**

Bolton further alleges the City failed to adequately train and supervise its officers to prevent unlawful arrests and the use of excessive force. Am. Compl. [#14] ¶ 10.1. To establish a § 1983 claim for failure to train or supervise, a plaintiff must show: "(1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Conner v. Travis Cty.*, 209 F.3d 794, 796 (5th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Accordingly, to satisfy the deliberate indifference prong, a plaintiff usually must demonstrate "[1] a pattern of violations and [2] that the inadequacy of training of is obvious and obviously likely to result in a constitutional violation." *Estate of Davis*, 406 F.3d at 381 (quotation and citation omitted); *see also Sanders-Burns*, 594 F.3d at 382 ("Claims of inadequate training generally require that the plaintiff demonstrate a pattern of conduct.").

In this case, Bolton has failed to adequately allege that any failure to train or supervise the Officer Defendants resulted from the City's deliberate indifference. As noted, the amended complaint falls short of demonstrating a pattern of unconstitutional conduct. Bolton's proffered pattern of constitutional violations consists of two tangentially related incidents from 2011 and 2012, neither of which involves the Officer Defendants. These two incidents are insufficient to constitute a pattern of unconstitutional activity of which the City should have been aware. *See, e.g., Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (concluding two claims of unconstitutional deadly force were insufficient to establish a pattern of unconstitutional conduct); *Pineda v. City of Hous.*, 291 F.3d 325, 329 (5th Cir. 2002) (concluding eleven incidents of unconstitutional conduct did not support a pattern of unconstitutional events).

To the extent Bolton alleges this case fits within the narrow scope of the "single incident" exception allowing municipal liability, this claim likewise fails. In certain extreme circumstances, "a single act by a municipal employee [can] form the basis of municipal liability apart from a pattern of unconstitutional activity." *Roberts*, 397 F.3d at 295. "To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." *Id.* (quoting *Brown*, 219 F.3d at 461). Bolton has pleaded no facts to show the Officer Defendants were improperly trained, nor has he shown the highly predictable consequence of that failure would result in Bolton's alleged injuries. Therefore, the single incident exception does not save Bolton's claims from the City's motion to dismiss.

In sum, Bolton's allegations do not meet the deliberate indifference standard required to support municipality liability and his municipal liability claims are therefore subject to

8

dismissal.[2] *Estate of Davis*, 406 F.3d at 381 (explaining deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action") (citation omitted).

**D.    Ratification**

Finally, Bolton argues APD's Chief of Police ratified the Officer Defendants' conduct because he was aware of the officers' conduct but failed to discipline them. A municipality may be held liable under a theory of ratification "[i]f the authorized policymaker approve[d] a subordinate's decision and the basis for it[.]" *Praprotnik*, 485 U.S. at 128. However, Fifth Circuit precedent limits the theory of ratification to "extreme factual situations." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1988)). Given this Fifth Circuit guidance, the Court concludes the instant case does not constitute an extreme factual situation under the ratification theory. *Compare Grandstaff v. City of Borger*, 767 F.2d 161, 168, 171 (5th Cir. 1985) (holding the city liable for the actions of a group of officers who mistook the plaintiff for a fugitive and killed him by "pour[ing] their gunfire at [his] truck"), *with Snyder*, 142 F.3d at 798 (refusing to find ratification where the officer shot fleeing suspect in the back) *and Peterson*, 588 F.3d at 848 (concluding the case did not present an extreme factual situation where the officers may have used excessive force in dragging the plaintiff from his car while he was sleeping). Moreover, it is well-established that "policymakers who simply go along with a subordinate's decision do not thereby vest final policymaking authority in the subordinate, nor does a mere failure to investigate the basis of a subordinate's discretionary decisions amount to such a delegation." *Milam v. City of San*

---

[2] Bolton also alleges the City has a policy of "failing to adequately investigate complaints of excessive force and false arrest" and "failing to discipline officers for valid complaints of excessive force and false arrest." Am. Compl. [#14] ¶ 10.1. To the extent Bolton raises these claims separately from his allegation that the City's polices are inadequate, these claims likewise fail. Bolton has failed to allege any facts which suggest the City was deliberately indifferent in failing to investigate or discipline its officers.

9

*Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004) (quotation and citation omitted). Bolton has failed to plead facts showing this case presents an extreme factual situation which merits holding the City liable under a theory of ratification.

**Conclusion**

Because Bolton has failed to plausibly state a claim against the City, the Court dismisses his § 1983 municipal liability claims without prejudice.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss [#19] is GRANTED; and

IT IS FINALLY ORDERED that the municipal liability claims brought by Plaintiff Grady Bolton against Defendant City of Austin are DISMISSED WITHOUT PREJUDICE.

SIGNED this the 26th day of June 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE