**EXHIBIT B**

## EXPERT REPORT OF Kimber Bustos

RE: Civil Action no. 1: -cv-0077-SS GRADY BOLTON, Plaintiff v CITY OF AUSTIN; AUSTIN POLICE OFFICER RANDY DEAR; AUSTIN POLICE OFFICER MANUEL JIMENIEZ; AUSTIN POLICE OFFICER MICHAEL NGUYEN; AUSTIN POLICE OFFICER ROLANDO RAMIREZ Defendants

1. My name is Kimber Bustos. I am a Texas Peace Officer with over 20 years of experience. I am currently a commissioned Reserve Police officer with Liberty Hill Police Department.

2. I was employed by the Texas Attorney General's Office 2004 at the rank of Sergeant. In 2008, I was promoted to the rank of Lieutenant and in 2012 I was promoted to the rank of Captain. I also served as the Internet Crimes Against Children Commander for 134 counties in Texas.

3. I hold a Master Peace Officer certification, Instructor certification, and Special Investigator (sexual assault) certification from the Texas Commission of Law Enforcement. I have attended over 1900 hours of law enforcement training throughout the United States.

4. In my career in law enforcement, I have studied and attended seminars on the issues of policies and procedures, use of force, Taser deployment, ASP certification, reasonable suspicion, probable cause, police supervision, law enforcement training, patrol procedures, constitutional law, firearms and officer safety. I have also instructed classes in the areas of arrest, search seizure forensics, search warrants, investigations, evidence procedures and several other types of training.
   a. The attached CV contains a detailed list of my training.

5. In addition to being a commissioned reserve officer, I also own and operate my own private investigations company. I have worked from over 2 years in the field of private investigations.

6. I have technical, professional and hands-on knowledge that will assist in understanding the facts and issues in the above-captioned lawsuit. My education, training and experienc3 provides me with technical, professional and other specialized knowledge which will assist a lay person in understanding how law enforcement officers are trained and why they are trained in the manner they are trained. This knowledge is the key to reaching a reliable evaluation of law enforcement officer' conduct. I have conferred with other law enforcement experts regarding police supervision, law enforcement polices and procedures, police operations, arrest, search and seizure training, arrest and control tactics and evaluations thereof. The facts and data on which I base my opinions based upon information I have learned from experts in the field of law enforcement in order to conclude them reliable.

7. The information below is I have been taught repeatedly over the years regarding use of force.

   a. According to the International Association of Chiefs of Police use of force is the "amount of effort required by police to compel compliance by an unwilling subject".

   b. Law enforcement officers should use only the amount of force necessary to mitigate an incident, make an arrest, or protect themselves or others from harm. The levels, or continuum, of force police use include basic verbal and physical restraint, less lethal, and lethal force.

   c. The level of force an officer uses varies based on the situation.  It is my customary practice to evaluate the appropriateness of police conduct on a case-by-case basis from the standard of how law enforcement officers are trained. Because of this method of evaluation, my opinions of the guidelines for the use of force for a particular event are based on many factors, including the officer's level of training or experience.

   d. An officer's goal is to regain control as soon as possible while protecting the community. Use of force is an officer's last option — a necessary course of action to restore safety in a community when other practices are ineffective.  (Grady presented no danger to the community)

   e. Injuries may occur in any use-of-force incident, and police should ensure that those injured receive medical aid and that the family of any injured person is notified.  In Mr. Bolton's case, the officers ignored this instruction until the nurse at the jail refused Mr. Bolton and the officers were forced to comply with the instruction by transporting him to the hospital for medical aid.

8. In my experience in police work, there are daily activity sheets that are filled out to document an officer's actions.  This can include the number of traffic stops and contacts, number of warning citations, citations, number of arrests and number of calls dispatched or received.

9. These statistics are often posted or distributed for all officers to review.  I have witnessed that Officers are often competitive and want to be at the top of the list, therefore, there are bets made by entire shifts and individual officers to be at the top of the list.  The bets involve anything from alcoholic beverages, meals, "dares" to participate in a particular undesirable activity, money and equipment.

10. This type of competition and betting sometimes leads to Officers making arrests and issuing citations unnecessarily and unfairly in order to "win" the bet or competition and be first or at the top of the stat sheets for the day/night, week, month, or year.

11. I have also witnessed awards given at the annual police banquet for the Officer who had the most productivity.

Research and Assessment Reviewed

12. My opinions and observations in this report are based on having visited the incident sites and having reviewed and researched the following materials and documents:

   a. Video recordings of Mr. Bolton's arrest, the Austin Police Department offense report and supplements, the arrest report, and the depositions of the Officers Jimenez and Nguyen, *The National Consensus Police on the Use of Force, -January 2017* and Mr. Bolton's medical records.

13. The video that I reviewed capturing Mr. Bolton's arrest undisputedly depicts Mr. Bolton is in no way an "unwilling subject" and was non-responsive both physically and verbally as police officers pulled on his arms, punched, kicked, attempted to roll his body over, and subsequently dragged him across the ground. He was unresponsive to officer's physical assaults on his person.

14. As officer's attempt to sit Mr. Bolton up, it is clear he is not supporting his own weight, his head is "bobbing" without purposeful movement, his neck is bent and his chin is on or near resting on his chest. Based upon my training and experience, Mr. Bolton is not purposefully making himself "limp" as indicated by Officer Nguyen in his deposition, nor does officer Nguyen report he performed any check of Mr. Bolton's state of consciousness.

15. There should be no question that any reasonable and well-trained law enforcement officer should have believed based upon their training, experience and specific facts of the incident at that time, that Mr. Bolton was not resisting arrest, nor was he verbally abusive. He, in fact, was limp and unresponsive to officer's physical assaults on his person.

16. As officers carry a handcuffed Mr. Bolton away from the initial arrest area, he is limp and unresponsive. Officers struggle to maintain their grip on Mr. Bolton as he appears to be unconscious and not supporting his own weight. He is not writhing, twisting, kicking or struggling with officers, nor is he communicating with them verbally. He later is seen sitting/lying on the curb complacent and not interacting with officers.

17. Upon review of the photos of Mr. Bolton after he was arrested, based upon my review of the video, my training and experience, the injuries inflicted upon Mr. Bolton appear excessive and unnecessarily inflicted.

18. Upon review of Officer Nguyen's deposition, I understood him to convey that after Mr. Bolton was on the ground holding his arms underneath his body using muscle strength in an attempt to avoid being handcuffed. In my experience in dealing with large persons who are lying on their arms in an unconscious state, it can be difficult to move their arms out from under their body. A person who is actively using muscle strength has a tendency to kick, yell and writhe as they are resisting. I did not observe any of those actions which I would expect to see from a consciously resisting person as officers attempted to pull a person's arms from under their body.

19. In my experience, repeatedly punching and kicking a person when they are conscious usually results in some type of instinctive flight, fight or freeze reaction. Although portions of Mr. Bolton's body is obscured by the officers punching, kicking, and holding him, I was able to see that Mr. Bolton did not instinctively react in a flight, fight or freeze mode on the video. What I did observe is a person who was void of any instinctive reaction which leads me to believe Mr. Bolton was unconscious.

20. I base my opinion that Mr. Bolton is unconscious through my training and experience in flight, fight and freeze reactions. I have learned the following about these basic human instinctive responses;

    a. In the flight instinctive reaction, a person usually responds by striking, writhing, kicking, yelling, biting or any other action in an attempt to break free and flee.
    b. In the fight instinctive reaction, a person usually responds by striking, writhing, kicking, yelling, biting or any other action in order to regain a stance of advantage to actively engage their opponent.
    c. In the freeze instinctive reaction, a person usually stays in place and takes protective action of their body by covering the head or curling the body and may scream or yell. A person in freeze response may also make no movement what-so-ever but they are usually rigid while in this response and unable to move their body or limbs, talk, scream or offer any purposeful resistance.

21. Based upon the documentation and testimony I have reviewed, verbal commands to comply were not conveyed until after Officers used hands on physical force. While there may be exigent circumstances that would require an officer to bypass verbal commands, Officer Jimenez did not articulate any exigent circumstance, such as a weapon, that would require him to plan the use of physical force prior to being met with any physical resistance.

22. Upon my review of Officer Jimenez deposition, I understood that he explained that he believed that Mr. Bolton was argumentative and a danger to himself or others due to public intoxication. In my training and experience, a person who is argumentative and has an odor of an alcoholic beverage cannot be automatically assumed to be intoxicated to the point they are a danger to themselves or others.

23. Officer Jimenez states Mr. Bolton's eyes are glassy, but does not explain how he was able to see in the dark or at best low-lit conditions and assumingly without a flashlight that Mr. Bolton's eyes were glassy.

24. My training on Standardized Field Sobriety Testing also contains information that medical conditions, such as diabetes, can cause a person to have an odor of an alcoholic beverage on their breath, have glassy eyes, and perhaps be unsteady on their feet. While it is reasonable to conclude that Mr. Bolton was not diabetic due to his environment, Officer Jimenez failed to articulate that an immediate arrest of Mr. Bolton was necessary which would prevent him from investigating further before reaching his conclusion. Instead, Officer Jimenez, according to his testimony of Mr. Bolton's appearance being consistent with "things we commonly see from drunk people downtown" made an assumption without investigation.

25. Officer Jimenez did not articulate it was necessary to lay hands on Mr. Bolton due to a concern for his physical safety or the safety of those around him or some other exigent circumstance nor did he give him a verbal command of what he expected him to do after he stated "You're under arrest."

26. If Officer Jiminez believed Mr. Bolton was incapable of decision due to his intoxicated state, clear verbal commands or instruction would have been reasonable and appropriate prior to escalating his action.

27. Officer Jimenez also testified that he had already decided to lay hands on him and perform a "leg sweep" because "it's easier oftentimes in a crowd to effect the arrest while someone is on the ground." In my training and experience, it is easier to give a person clear verbal commands and gain compliance to effect an arrest while the person is standing. Effecting an arrest by sweeping a person's legs and knocking them to the ground can result in injuries to the person and the officer. It also can provoke the fight flight or freeze instinctive action which escalates the situation unnecessarily. Additionally, it is often difficult to assist a person, particularly larger persons, to their feet after being knocked to the ground.

28. Officer Jiminez failed to attempt to any verbal commands to attempt to gain compliance according to his deposition testimony. He failed to follow the use of force protocol as I know it to attempt to properly evaluate Mr. Bolton's state of being and mind. Mr. Bolton was, according to his testimony "tensing up" and "bladed off". In my training and experience, "tensing up" or "blading off" alone is not is a level of resistance that requires an immediate physical take down such as a leg sweep, on the use of force continuum. Verbal commands, however, would be an appropriate step to attempt to gain compliance from the person.

29. Officer Jimenez answers affirmatively to the question on whether or not the decision to arrest was a "joint decision" between he and Officer Johnson, however the decision was non-verbal and "almost instinctual" which indicates that Officers had entered into "fight mode" and in that reactionary mode, failed to properly assess the situation, thereby escalating past the verbal command stage of the standard use of force continuum without just cause.

30. Officer Jimenez testified that "oftentimes people that are belligerent, intoxicated, I'm not sure if it's a way to be defiant or a way to—regardless, people refuse to use their feet." In my opinion, this reflects Officer Jimenez' ability to properly evaluate this particular situation due to the fact he is "oftentimes" faced with intoxicated people and has been conditioned to conclude that a person who is intoxicated is going to be belligerent and uncooperative.

31. Upon review of Officer Johnson's report, I observed Officer Johnson demonstrated many of the same behaviors of Officer Jimenez as I have detailed previously. His use of physical force was initiated due to what he describes as verbal non-compliance and an argumentative stance by Mr. Bolton.

32. The particular observations I identified in Officer Johnson's report aside from the previously mentioned issues similar to Officer Jimenez' reactions are that according to Officer Johnson's report, when Officer Jimenez told Mr. Bolton he was about to go to jail, Mr. Bolton asked why. Officer Johnson said "disobey lawful order" but no time, according to his report, did Officer Johnson give him any verbal commands or instructions once he decided to arrest him nor did he describe any exigent circumstance or exhaustive efforts using verbal commands that would require him to lay hands on Mr. Bolton immediately.

33. Officer Johnson states that Mr. Bolton was "actively resisting by using the strength of his muscles to prevent officers from putting his hands behind his back and hand cuffing him". He does not articulate that he gave any verbal commands at that time, nor does not articulate that Mr. Bolton was attempting to punch, kick, spit upon or bite officers. Furthermore, he does not articulate that Mr. Bolton was he actively trying to flee.   Based upon my training and experience, Mr. Bolton's resistance did not rise to the level which would justify a "brachial stun" use of force.

34. Failure to property evaluate individual circumstances, in my experience, is due to the nature of police work and the environment Officers work in daily, Officers are susceptible to conditioning which can result in complacency or over-reaction based upon their repeated exposure to a similar situation. Officer Jimenez verbally acknowledges his actions were "instinctive" and displays indications that cause me to conclude both his action and the actions of officer Johnson are the partially the result of conditioned "instinct" which caused them to react without thought or evaluation of the actual situation and without regard of their use of force training.

35. In conclusion, after a review of the exhibits listed above, my training and experience and the totality of the circumstances of the arrest of Mr. Bolton, it is my belief that the use of force procedures and investigations that I conducted received training for and have practiced throughout my law enforcement career were not followed nor was it articulated or established at the time Mr. Bolton was grabbed, forced to the ground through an attempted "leg sweep" a subsequent by use of a "brachial stun", and repeated strikes to his face and body were the appropriate use of force necessary to gain the compliance and effect an arrest of Mr. Bolton.

Signed and submitted this 31st day of January, 2018 by

Kimber Bustos

Statement of Required Fee for Expert Testimony
Kimber Bustos

My standard rate for my services is $75.00 per hour of testimony and includes travel time and mileage to and from any proceedings where my testimony is required and any expenses incurred such as parking or other necessary expenses.  Reimbursement for meals is not required or expected.

My invoices are considered past due after 30 days of non-payment and a late fee may be charged for invoices that are not paid after 60 days.