**EXHIBIT E**

My name is Sharla Hanke.  I have been retained by the City of Austin to serve as an expert on the effects of alcohol on the human body.

Education and Experience

I have a Bachelor of Science degree in Chemistry and Mathematics from Wayland Baptist University and a Master of Science degree in Forensic Science from Sam Houston State University. I have been employed with the Texas Department of Public Safety Crime Laboratory as a Forensic Scientist since September 2007. I have been qualified in blood alcohol analysis for the Department of Public Safety since September of 2010.  As an analyst, I was responsible for analysis of blood samples, technical review of other analysts' case records, and all associated testimony. From August 2013 till May 2017, I was the supervising Forensic Scientist and technical lead for the blood alcohol and controlled substance section at the Texas Department of Public Safety Crime Laboratory in Corpus Christi, TX. In June 2017, I transferred to the Breath Alcohol Laboratory in Austin, TX. In this position, I am responsible for the technical supervision of breath alcohol operators and instrumentation in the Travis County area. Additionally, I have continued to consult on blood alcohol analysis both in training and casework.

Alcohol

Alcohol as a drug is impairing to the human body and is classified as a central nervous system depressant. As alcohol concentration levels rise, impairment first presents with a decrease in judgement and decision making as well as a decrease in inhibitions. Both vision and perception begin to be affected at low levels of alcohol concentration leading to a decrease in performance of psychomotor skills such as coordination and balance. As alcohol concentration continues to rise, disorientation and mental confusion may be observed. Vomiting and impairment or loss of consciousness may be observed at higher alcohol concentrations.

Tolerance is defined as the ability to mask the outward signs and symptoms of a drug. With continued use, a person may appear to be less impaired or display no impairment symptoms. Tolerance must be considered when evaluating impaired individuals. For example, a person may not display a reduction in psychomotor skills but decision making and vision would still be affected.

Bolton v. City of Austin, et al.

I have reviewed Mr. Bolton's medical records from the Travis County Jail, St. David's South Austin Medical hospital, and University Medical Center Brackenridge hospital, Austin Police Department Officer's reports concerning Mr. Bolton's arrest, and the transcript of Grady Bolton's testimony dated December 13, 2017.

In review of the above records from the incident occurring on February 8, 2015, the serum alcohol concentration from the medical records was 260 milligrams of alcohol per deciliter (mg/dL) of serum at 0548 hours on February 8, 2015. A serum result of 260 mg/dL would convert to 0.220 grams of alcohol per 100 milliliters of blood (g/100 ml). A male weighing 210 pounds would have approximately nine and a half (9.5) 4.2% alcohol by volume, 16 ounce beers in his system to achieve a measured blood alcohol

content of 0.220 g/100ml.  Since Bud Light beers contain 4.2% alcohol by volume and Mr. Bolton claims he drank 16 ounce aluminum bottle Bud Light, then he would need to have consumed at least nine and a half (9.5) 16 ounce Bud Light beers to achieve the measured alcohol concentration. In review it was noted that Mr. Bolton was not certain that he ingested only beer; he may have also ingested other alcoholic beverages such as liquor or mixed drinks.

There was approximately a three and half hour (3.58 hours) delay from the time of arrest until the blood was drawn for analysis. Mr. Bolton stated in his deposition that he was finishing his last drink between 0150 and 0200. He was subsequently arrested at 0212.  It is unlikely he would have achieved his peak alcohol concentration at the time of arrest due to the time difference. However, he would have reached his peak alcohol concentration 20 to 30 minutes after arrest. Alcohol is eliminated from the body at a rate of 0.01 to 0.03 g/100 ml per hour. Due to the time delay from arrest to the serum analysis, Mr. Bolton would have more alcohol in his system or a higher alcohol concentration while he was interacting with the officers.

Under the Texas Penal Code, as related to driving while intoxicated offenses, intoxication is defined as 0.08 g/100 ml or the loss of the normal use of mental or physical faculties. Mr. Bolton's alcohol concentration was almost three times this legal limit while at the hospital receiving medical treatment. As stated above, the incident was approximately three and half hours before his blood was drawn, indicating his alcohol concentration would be the same or higher at the time of the incident.

While specific impairment symptoms cannot be attributed to an exact level of alcohol in the human body, the behavioral and physiological indicators recorded by both officers and medical professionals are consistent with Mr. Bolton's elevated alcohol concentration. These included an odor of alcohol on his breath, slurred speech, vomiting, and a potential loss of consciousness. Additionally, alcohol can cause impaired memory and comprehension at the measured level as well as disorientation and mental confusion. Confusion and memory issues were noted throughout the interviews with Mr. Bolton after the incident. Although he claimed a loss of consciousness, this fact is not supported by the medical records and more likely resulted from the alcohol present in his system. This same principle applies to the Neurological Assessment in the medical records which noted the presence of nystagmus or an involuntary jerking of the eyes during the medical exam.

In my expert opinion, based on my experience in alcohol toxicology, Mr. Bolton was impaired by alcohol at the time of his initial interaction with Austin Police Department officers and subsequent arrest. This is evidenced by both his measured serum alcohol concentration and the physical and behavioral symptoms of alcohol impairment he exhibited.

Compensation

For consultation as an expert for this case, I am being compensated at a rate of $150 per hour.


Expert Testimony

See attached.

Publications

Leggett AS & McCloskey SC. Toolmarks. In Keppel RD, Brown KM, Welch K, editors, Forensic Pattern Recognition: From fingerprints to toolmarks. Upper Saddle River, NJ:Prentice Hall, 2006.

Sharla McCloskey, BS; Anna Leggett, BS; Rachael Malfer; Sarah Kerrigan, PhD Presented at 2007 American Academy of Forensic Science National Meeting, Toxicology Poster Session:

**Driving Under the Influence of Methamphetamine: Comparison of Driving Behavior and Impairment Symptoms in Subjects Arrested for Driving While Intoxicated (DWI);

 *Driving Behavior and Impairment Symptoms in Cannabinoid Positive Subjects Arrested for Driving Under the Influence of Drugs (DUID);

*Cocaine Impaired Driving: Evaluation of Toxicology, Driving Behavior and Impairment Symptoms in Arrested Drivers.

Signed _____    Dated: February 28, 2018

Sharla Hanke